## ALLEN v. COOLEY.

1. STRIKING OUT ALLEGATIONS—MOTIONS FOR.—No error in refusing to strike out certain allegations as redundant and irrelevant.

2. IBID.—WAIVER.—Motion to strike out portions of a complaint are not waived by answer, if noticed before service of answer.

3. FRAUD.—Complaint herein states facts showing that the sale of goods was fraudulent, pretensive and without consideration.

4. RES JUDICATA.—Judgment in action. of creditor against a firm is *res judicata* as to the validity of the note on which it is based, in an action by withdrawn partner against the other to set aside a sale of goods by such partner to a third party after division of partnership affairs, and assumption by such partner of partnership debts, as a scheme to defraud firm creditors and withdrawn partner.

5. FRAUD—RECEIVER.—Action of Circuit Judge in setting aside a sale of stock of goods to a third party by partner assuming debts of firm, after division of firm assets and appointing a receiver, as a fraud upon firm creditors and withdrawn partner, affirmed.

6. RECEIVER.—MASTER should not be appointed receiver.

7. APPEAL.—Question not raised before. or passed on by Circuit Judge not considered here, but judgment entered without prejudice, and with leave granted party to make the question below.

Before BUCHANAN, J., Abbeville, August, 1900. Modified.

Action by B. Berry Allen against David K. Cooley. and Thomas D. Cooley on the following complaint:

"1. That the plaintiff and the defendant, D. K. Cooley, up to September 30, 1897, and for several years previous thereto, were partners in a general merchandise business, at Lowndesville, in the county of Abbeville, in the State of South Carolina, under the firm name of 'Allen & Cooley.' That the plaintiff is a farmer and was an inactive partner in said business, and knew nothing of the same—the entire management and control of said business having been in the hands of the defendant, D. K. Cooley. That the defendant, Thomas D. Cooley, is a brother of the said D. K. Cooley, and has since June, 1891, been the book-keeper of the said firm of 'Allen & Cooley.' That up to a short time preceding

23—60

the 30th day of September, 1897, the plaintiff had all confidence in his partner, the said D. K. Cooley, and paid no attention whatever to the said business; but that now and since the 30th September, 1897, all confidence is gone, and there exists bitter and hostile antagonism between himself and both of the defendants.

"2. That on the said 30th September, 1897, a mutual dissolution of the firm of Allen & Cooley was agreed upon, at which time the said D. K. Cooley made and delivered to this plaintiff a paper of which the following is a copy: 'State of South Carolina, Abbeville. Know all men by this paper, that by reason of a mutual dissolution of the firm of Allen & Cooley, that I, D. K. Cooley, have bought the entire stock of goods and chattels belonging to the firm of Allen & Cooley, together with all notes, mortgages, accounts, liens and deposits; and I do hereby assume all the indebtedness of the old firm, and do hereby release B. Berry Allen from all obligation in the payment of the same. (Signed) D. K. Cooley. H. C. Fennell, witness. September 30th, 1897. Received of B. Berry Allen in full of all demands up to date. October first, 1897. D. K. Cooley.'

"3. That in said dissolution and settlement the real estate of the firm was divided between the partners, and the following statement as to the other assets and liabilities was, at that time, presented by the said D. K. Cooley and by which the settlement was made—the same being in the handwriting of the said Thomas D. Cooley, and who was present and participated in the settlement: Statement. Allen & Cooley, September 1st, 1897.

| | | |
|---|---:|---:|
| Accounts '91, '92, '93, '94, '95 and '96 | $ 3,907 | 82 |
| Accounts, 1897 | 15,582 | 58 |
| Notes | 1,548 | 30 |
| Mortgages, old | 2,535 | 43 |
| Mortgages, new | 3,439 | 59 |
| Stock on hand | 5,229 | 12 |
| One buggy, Jink Parnell | 65 | 00 |

Rent cotton due.........................      564  60

                                          $38,871  84
Liabilities ..............................   11,536  72

                                          $27,335  12
Notes, mortgages and accounts, no good......   8,737 .10

                                          $18,598  02
That the whole of this amount of $18,598.02 came into the
hands of the said D. K. Cooley with which to pay the debts
of Allen & Cooley, and that by his own statement as to good
and bad assets.

"4. That the said D. K. Cooley has not paid the debts of
Allen & Cooley as agreed.   That plaintiff has never been
over the books and does not know who are the creditors or
the amount of indebtedness, except from the condensed state-
ment above referred to, but to the best of his information
and belief, derived from judgments already obtained against
Allen & Cooley, from suits now pending against Allen
& Cooley (being five in number), and from claims now
in the hands of attorneys for suit, viz: Tribble & Prince, F.
B. Gary, W. P. Greene, DeBruhl & Lyon, Perrin & Cothran
and others, there remains now unpaid of the debts of Allen
& Cooley between seven and eight thousand dollars, and for
all of which this plaintiff, as the former partner of the said
D. K. Cooley, may be held responsible.

"5. That the said D. K. Cooley has made no payments
on the debts of Allen & Cooley since December, 1897, when
he paid $100 to Powers, Gibbs & Co., who had then begun
suit against Allen & Cooley, although he has had ample
assets from the firm of Allen & Cooley with which to pay all
of the debts of the said firm as he agreed to do, and has act-
ually collected, as this plaintiff is informed and believes, suf-
ficient of the assets so to do.   That this information is
derived from Mr. W. C. Tennent and Mr. E. R. Horton,
cotton buyers at Lowndesville, S. C., and from his own
observation as to the amount of business done by the said D.

K. Cooley after the dissolution and the collections he must have made.

"6. That the only real estate owned by the said D. K. Cooley is the store in the town of Lowndesville and a house and lot there. This plaintiff does not think that the store would bring on the market more than $1,000 and the house more than $700. That on the 9th day of December, 1897, the said D. K. Cooley executed to his brother—the same Thomas D. Cooley—a mortgage on the said store house for $714, the consideration for the said alleged mortgage as expressed therein, being for 'services due by Allen & Cooley.' That with this alleged mortgage and the homestead of the said D. K. Cooley (who is a married man), there is nothing in his real estate for creditors. That in the schedule of assets and liabilities presented at the dissolution this amount for services does not appear, nor was anything said about it.

"7. That on the     day of    , but after the dissolution and agreement of D. K. Cooley to pay the debts of Allen & Cooley, the said D. K. Cooley, for an alleged consideration of $3,580, sold his entire stock of merchandise, fixtures and business to his brother—the same Thomas D. Cooley. That said paper was probated December 21st, 1897, and recorded although not dated, and the said Thomas D. Cooley now claims the entire business of the late firm of Allen & Cooley. That the defendant, D. K. Cooley, has stated, under oath, that previous to the above pretended sale, shortly after the claim of Mrs. K. W. Allen was presented to him for payment and which he refused to pay, being early in the month of October, 1897, he bargained his stock and business to his brother—the same Thomas D. Cooley—and did have the insurance policy on the stock of goods transferred back, giving as the reason therefor that the said Thomas D. Cooley could not raise the money or borrow it.

"8. That two judgments have lately been recovered on the debts of Allen & Cooley, one in favor of Powers, Gibbs & Co., for $798.15, and one in favor of Mrs. K. W. Allen for over $3,000. That executions have been issued in both

of these cases, and that as to the defendant, D. K. Cooley, there has been in both cases a return of *'nulla bona'* by the sheriff of Abbeville County, S. C.

"9. That Thomas D. Cooley, the brother and book-keeper of D. K. Cooley and the pretended purchaser of the said business, is a young married man, who has been working on a salary such as is usually paid in country stores, which this plaintiff alleges, was little more, if any, than was necessary for the support of his family, and that he did support his family from his salary; plaintiff is further informed and believes, that the home of the said Thomas D. Cooley is not yet paid for, and if so that payment was completed at a very recent date. That this information is derived from Thomas D. Cooley himself, and plaintiff knows of his own knowledge that he was paying for his home in a building and loan association by monthly instalments, which also came from his salary.

"11. That the said Thomas D. Cooley has stated, under oath, that he paid for said stock and business the sum of $3,580; that he paid cash to the Bank of Anderson the sum of $2,000 on a note due there by Allen & Cooley, and that he has now in cash for the plaintiff $1,580, the same being the amount of two notes due the plaintiff by D. K. Cooley, and which was a part of the settlement of September 30th, 1897, and which are not due until November and December, 1898. That to secure the balance of $2,000 in the Anderson Bank there has been deposited some $6,600 of good assets and collaterals of Allen & Cooley. That the said Thomas D. Cooley also stated, under oath, that he made the money with which he purchased the business; that he got all of the collateral out of the Anderson Bank, and that some of it, he declining to say how much, had been assigned to him by D. K. Cooley.

"12. That the said Thomas D. Cooley also stated, under oath, that he did not intend to pay one cent of the debts of Allen & Cooley; that he now claims everything in sight connected with the late business of Allen & Cooley, and the

sheriff of Abbeville could find nothing whatever to levy upon as the property of D. K. Cooley.

"13. That the said Thomas D. Cooley also stated, under oath, that in 1891 he had lent to his brother, D. K. Cooley, $1,750 with which to pay his expenses while a fugitive from justice, and that he now holds his note for the same and interest; when, as matter of fact, in the alleged trade for the business involving a layout of $3,580, no mention was made of the note as set off or otherwise. He stated that he paid in cash $2,000 to the bank and was ready to pay the $1,580 when the notes became due.

"14. This plaintiff alleges that it is an impossibility for the said Thomas D. Cooley to have had the $3,580, and that he never paid same to his brother, D. K. Cooley. That he may have and probably did hand over to the Anderson Bank $2,000, but if so, that it was the money of D. K. Cooley, collected from the assets of Allen & Cooley; and that the pretended sale is a fraudulent scheme between the two brothers, to defeat the creditors of Allen & Cooley and D. K. Cooley.

"15. This plaintiff alleges that he made the settlement and dissolution in good faith, believing at the time that Cooley was getting the best of it, but willing to do it if he would honestly carry out his agreement and pay the debts, and at that time this plaintiff believed that he would. That no confidence now exists between himself and the Cooleys, and no relations of any kind except hard and bitter feeling. That the assets of the firm of Allen & Cooley are being diverted and dissipated, and that the Cooleys, instead of paying the debts of the old firm, are making every effort to defeat them. That it was the understanding when the old firm was dissolved, that D. K. Cooley should continue the business and pay the debts, and this plaintiff declined to take a mortgage to secure the notes for $1,580 above referred to because, as he said at the time, it might injure the credit of D. K. Cooley, and he wanted him to go on in the business and pay the debts. That irreparable loss is imminent to this plaintiff, as he may have the debts of Allen & Cooley to pay, if not

paid by D. K. Cooley as promised; and as the retiring partner who has done all that he can, and for the benefit of all concerned and in all equity and good conscience, he prays:

"1. That the alleged sale of the stock of goods and business of the late firm of Allen & Cooley to Thomas D. Cooley by D. K. Cooley, be declared fraudulent and void, and made to hinder, delay and defeat the creditors of Allen & Cooley and D. K. Cooley.

"2. That the alleged mortgage given to Thomas D. Cooley by D. K. Cooley, on the brick store in Lowndesville for $714, for alleged services due by Allen & Cooley, be declared fraudulent and void, and made to hinder, delay and defeat the creditors of Allen & Cooley and D. K. Cooley; and if not fraudulent, that it is a virtual assignment and the same is a preference and is void.

"3. That a receiver be immediately appointed by this honorable Court, to take charge of the entire business of Allen & Cooley, together with all the books, accounts, liens, mortgages, notes and chattels of every description connected with said business. That said receiver do wind up the said business as soon as possible, subject to the direction of this Court, and that he hold all proceeds subject to the future order of this Court.

"4. For such other and further relief as to this honorable Court may seem just and proper."

The Circuit decree is as follows:

"This case was heard by me by consent of all parties on Tuesday of the Abbeville Court last month, upon the pleadings, testimony and report of the master, and after carefully considering the whole case, which was ably argued on both sides, I will now state my conclusions upon the whole matter.

"The motion made by the defendants to strike out certain portions of the complaint, set out in their notice of motion, served on February 17th, 1898, and one day before the service of the answer, is refused. It is very questionable, under the case of *Whaley* v. *Lawton,* 53 S. C., 580, if the defend-

ants did not waive this motion by answering the complaint after serving said notice; but I do not think that the portions objected to, are irrelevant or impertinent to the issues evolved, and I cannot see any grounds for striking them out.

"As to the demurrer interposed by the defendants to the complaint, and argued with much ability by the counsel, I have given due consideration and overrule the same. The parts of the complaint objected to, are relevant and material to the full statement of the cause of action. The complaint alleges a scheme on the part of the defendants to defraud the creditors of the firm of Allen & Cooley, and the allegations of the complaint objected to are material to the issues involved, and satisfy me that the complaint does state facts sufficient to constitute a cause of action.

"The right of the plaintiff to bring this action, and that he is entitled to the kind of relief prayed for in the complaint, if the proof warrants the same, has already been decided by the Supreme Court in the case of *Allen* v. *Cooley*, 53 S. C., 443, where the Court says: 'There is no doubt that the surety might have brought an action against the principal debtor and the creditor to require the principal debtor to pay the debt, to the relief of the surety, as was done in the case of *Norton* v. *Reid*, 11 S. C., 593; and, if so, we see no reason why the surety may not in a case like this, where the creditors are, probably, numerous and the assets left in the hands of the principal debtor for the payment of the partnership debts consists largely of choses in action which can be so easily dissipated, resort to the mode which has been adopted by the plaintiff to protect himself from liability to the partnership creditors.'

"The plaintiff and the defendant, D. K. Cooley, were partners in trade, and had been for years, at the town of Lowndesville prior to the 30th day of September, 1897. On that day a dissolution was agreed on between them, by mutual consent, and the defendant, D. K. Cooley, agreeing to assume the payment of all the debts, executed the paper in evidence, of which the following is a copy: 'The State of

South Carolina, Abbeville County.   Know all men by this
paper, that by reason of a mutual dissolution of the firm of
Allen & Cooley, that I, D. K. Cooley, have bought the entire
stock of goods and chattels belonging to the firm of Allen &
Cooley, together with all notes, mortgages, accounts, liens
and deposits; and I do also hereby assume all the indebted-
ness of the old firm and do hereby release B. Berry Allen
from all obligations in the payment of the same.   (Signed)
D. K. Cooley.   H. C. Fennell, witness.   September 30,
1897.   Received of B. Berry Allen in full of all demands up
to date, October first, 1897.   D. K. Cooley.'   For the pur-
poses of the dissolution, a statement of the assets and liabili-
ties of the firm was submitted by D. K. Cooley and which
was made out by Thomas D. Cooley, the other defendant,
who was the book-keeper of the firm and had been since the
year 1891, a copy of which statement is as follows.   State-
ment of Allen & Cooley, September 1, 1897:

Accounts '91, '92, '93, '94, '95 and '96 . . . . . . . .$ 6,907 82
Accounts 1897 . . . . . . . . . . . . . . . . . . . . . . . . . .  15,582 58
Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1,548 30
Mortgages, old . . . . . . . . . . . . . . . . . . . . . . . .   2,535 43
Mortgages, new . . . . . . . . . . . . . . . . . . . . . . . .   6,439 59
Stock on hand . . . . . . . . . . . . . . . . . . . . . . . . .   5,229 12
One buggy, Pink Parnell. . . . . . . . . . . . . . . . . .      65 00
Rent cotton due. . . . . . . . . . . . . . . . . . . . . . . . .     564 00
                                                                      ──────────
                                                         $38,871 84
Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11,536 72
                                                                      ──────────
                                                         $27,335 12
Notes, mortgages, accounts, no good. . . . . . . . . . . 8,737 10
                                                                      ──────────
                                                         $18,598 02

"This did not include about 800 acres of land which was
turned over to B. Berry Allen, the plaintiff, at the price of
$3,500, and a house and lot and storehouse turned over to
D. K. Cooley.   By the terms of the dissolution the plaintiff

agreed to receive and did receive in full of his interest the tract of land above and two notes of D. K. Cooley, indorsed by T. D. Cooley, for $790 each, one payable on November 1, 1898, and the other payable on December 1st, 1899. And all other assets of the firm, real as well as personal, were turned oved to the defendant, D. K. Cooley. Soon after the dissolution was consummated, Mrs. K. W. Allen presented a note, purporting to be signed by Allen & Cooley, and dated 20th November, 1891, for $2,000 to the defendant, D. K. Cooley, and demanded payment thereof. He refused to pay it, and said he knew nothing about any such debt of Allen & Cooley. The next day after this demand on D. K. Cooley, he made an arrangement to sell his stock of goods to his brother, T. D. Cooley, went to the insurance agent and had the policy issued on the goods changed to his brother, T. D. Cooley; but a few days afterwards D. K. Cooley returned to the insurance agent and procured a retransfer of the insurance policy to himself, stating to the agent that the trade with T. D. Cooley had fallen through, as T. D. Cooley had failed to get some money from a kinsman of his whom he expected to let him have it. On the first of November, 1897, Mrs. K. W. Allen commenced an action against the said D. K. Cooley on said note and at the next term of the Court obtained a judgment on the same. After this suit was commenced, to wit: on the 8th day of November, 1897, D. K. Cooley executed a bill of sale to T. D. Cooley of the said stock of goods and store fixtures for the consideration expressed therein of $3,580, to be paid as follows: $2,000 to the Bank of Anderson on the note due by Allen & Cooley, due December 3, 1897, and $1,580 to the plaintiff on the two notes hereinbefore alluded to. The money that T. D. Cooley testifies was due to him by D. K. Cooley for services as clerk and book-keeper and the loan made him of $1,750 in 1891, were not considered in the trade. On the 12th day of February, 1898, the summons and complaint in this action was filed in the sheriff's office for service. T. D. Cooley claims to have paid the $2,000 to the bank out of his own funds

realized from the drug business of Cooley & Spear at Lowndesville and in selling clocks and bibles. The complaint alleges that the said Thomas D. Cooley was a young man, living on a salary such as is usually paid to a clerk or book-keeper in a country store, little if any more than was necessary for his support and that of his family; that his home had not been paid for and that he was paying for it by monthly instalments to a building and loan association. It is strange that this defendant when on the stand could not tell how much his expenses were, what his furniture cost and how much he made out of his clock and bible business. It is shown by the evidence that a few days after the attempted transfer of the property from D. K. Cooley to T. D. Cooley, the trade between them was off on account of T. D. Cooley's inability to raise the necessary funds. This was about the 8th of October, and yet on the 8th of November thereafter, T. D. Cooley found himself prepared to consummate a trade which he failed to do thirty days previous, with funds received from the two enterprises referred to. Did he not have the same funds to look to in October, just one month before? In their testimony they try to explain this by saying that the first trade was that T. D. Cooley should take the entire business of Allen & Cooley and pay all the debts, that the debts amounted to $12,000, and that he was unable to raise it. This must have been an afterthought, for in the answer of D. K. Cooley, paragraph VII., he swears with particularity that the trade was rescinded 'because of the inability of his codefendant to raise the money to pay this defendant for the stock of goods.' The testimony in the case and the inspection of the checks introduced in evidence satisfy my mind that D. K. Cooley collected between the 8th and the 24th November, 1897, a considerable amount of money from the business of Allen & Cooley; that he turned it over to his codefendant, T. D. Cooley, who deposited it in the bank to the credit of Cooley & Spear, and drew against it on November 24th to pay the $2,000 bank note. Then, again, it seems incredible that T. D. Cooley should agree to

pay for the stock in the manner stated, when he says his brother, D. K. Cooley, had owed him for several years $1,750, money loaned him in 1891, while he was a fugitive from justice. The defendant, D. K. Cooley, as is shown by the evidence in this case, also sells most of the choses in action which belonged to the old firm of Allen & Cooley, to one S. J. Duckworth for $3,000 cash, does not pay one dollar of same on the debts of Allen & Cooley, as he had agreed he would do and as in law and good conscience he was bound to do, and does not even show what amount of assets he sold to Duckworth or what per cent. on same he received for said assets.

"I am satisfied from the evidence in the case that the defendant, D. K. Cooley, made the said sale to his brother, T. D. Cooley, of said stock of goods to defeat and defraud his creditors, and the defendant, T. D. Cooley, knew of it and was a party to it, and that the defendant, D. K. Cooley, is wasting the said assets of Allen & Cooley and not paying same on the debts of Allen & Cooley. It appears from the evidence that the land which had been turned over to the plaintiff on the dissolution of the firm has been sold under the order of this Court in another proceeding for the purpose of paying the debts of Allen & Cooley, and that the purchase price of said land and the moneys arising from the said two notes which were given to said plaintiff are now in the hands of the master of this Court to pay off said creditors of Allen & Cooley, which the said D. K. Cooley had agreed to pay, and for which purpose the assets of said firm were left in his hands to do. I find as conclusions of fact:

"1st. That the partnership of Allen & Cooley had been dissolved.

"2d. That in the dissolution of the firm, the defendant, D. K. Cooley, assumed the payment of all debts of the old firm of Allen & Cooley, and released the plaintiff, B. Berry Allen, from all obligations for the same.

"3d. That the debts amounted to $11,536.72, and that

the said D. K. Cooley received assets to the value of $18,718.20 with which to pay them.

"4th. That there are judgments and other debts outstanding and unpaid against the firm of Allen & Cooley of $3,669.75 over and above the judgment of Mrs. K. W. Allen.

"5th. That the defendant, D. K. Cooley, having determined to resist and evade the payment of the creditors of Allen & Cooley, and especially the note of Mrs. K. W. Allen, fraudulently conspired with the defendant, T. D. Cooley, who was cognizant of his purpose and a party to the same, to transfer all the visible assets of the firm of Allen & Cooley received by him in the agreement of dissolution to said T. D. Cooley, with intent to delay, hinder and defraud the creditors of said Allen & Cooley, and that the pretended sale of the stock of goods by D. K. Cooley to T. D. Cooley is fraudulent and void.

"6th. That *nulla bona* returns have been made on the executions lodged against the said defendant, D. K. Cooley.

"7th. That the assets of the said partnership received by D. K. Cooley have been and are being wasted and misapplied.

"8th. That the property of the plaintiff has already been sold and the money arising from the sale of the same as well as the money collected on the notes due him on the dissolution of the partnership, are now in the treasury of this Court to pay the said debts of the partnership of Allen & Cooley, which the defendant, D. K. Cooley, has assumed to pay, and the plaintiff is in imminent danger of being required to pay the same and suffer irreparable loss.

"I find as conclusions of law:

"I. That the plaintiff is entitled to the appointment of a receiver, as prayed for in the complaint.

"II. That the pretended sale of the stock of goods by D. K. Cooley to T. D. Cooley, set out in the complaint, should be, and hereby is, set aside and declared fraudulent and void.

"It is, therefore, ordered, adjudged and decreed:

"I. That L. W. Perrin, the master of Abbeville County, be and he is hereby appointed receiver of the late firm of Allen & Cooley, to get in, collect and receive the outstanding debts and moneys due to or on account of the said partnership of Allen & Cooley, at Lowndesville, S. C., and also to receive and take possession of all the stock in trade, effects and property of every kind lately belonging to the said partnership in the possession of the defendants, D. K. Cooley or Thomas D. Cooley, or either one of them, and to sue for and recover all amounts due said firm, and also to sue on the bond given by the said Thomas D. Cooley for said stock of goods, which was heretofore given by him, if the same is not paid over to him on demand.

"II. That it is further ordered and adjudged, that the said defendants, and each of them, deliver and turn over to said receiver all the stock in trade, effects and property of every nature or kind, of or lately belonging to said partnership, or in their possession, or subject to their control, and also all moneys, notes, drafts, bills of exchange, checks or other evidence of indebtedness due to said partnership, together with all books of accounts, accounts, receipts, vouchers and papers of every nature and kind lately belonging to or pertaining to said partnership business.

"III. That W. C. Tennant, the temporary receiver heretofore appointed, do turn over to the permanent receiver herein appointed, all moneys, books and other property which come into his hands as such receiver.

"IV. It is further ordered, that the receiver herein appointed do hold the said moneys, property and effects subject to the further order of this Court, except that he is to sue and collect all the notes, bonds, mortgages, accounts and other choses in action as soon as practicable and convert them into money."

Defendants appeal on following exceptions:

"I. Because his Honor erred in overruling the demurrer interposed by the defendant, Thomas D. Cooley, said demur-

rer showing that the complaint did not state any cause of action, in that it did not allege that either of the defendants was insolvent, or in danger of becoming so; and in that the complaint shows on its face that the partnership mentioned had been dissolved by mutual consent, an account stated and agreed to, and that the plaintiff had received his full share of the property, and no longer had any interest in the business; and in that the complaint failed to state any facts showing that the sale of goods made to Thos. D. Cooley by D. K. Cooley was fraudulent, pretensive and without consideration.

"II. Because the Court erred in overruling the motion to strike out the irrelevant and redundant matter in the complaint, and in holding that it was questionable, under the case of *Whaley* v. *Lawton,* 53 S. C., 580, if the defendant did not waive the motion by answering the complaint.

"III. Because his Honor erred in not considering the defense set up by the pleadings and sustained by the testimony, that the K. W. Allen judgment was fraudulent and void, and in not finding from the testimony that the plaintiff was estopped from bringing this action, as the proof showed the action was brought for the purpose of collecting the K. W. Allen judgment, and that said judgment was fraudulent.

"IV. Because the testimony clearly showed that the money paid by Thomas D. Cooley for the stock of goods went to the creditors of Allen & Cooley, was paid by Thomas D. Cooley in good faith, out of his own funds, and it was error in his Honor to hold that the sale of the stock of goods was fraudulent and void.

"V. Because the evidence showed that the two notes given by D. K. Cooley to B. B. Allen, and indorsed by Thomas D. Cooley, were paid by Thomas D. Cooley to the master of Abbeville County, under order of the Court, and it was error in his Honor not to order said money returned to Thomas D. Cooley, when the Court ordered the sale of the stock of goods set aside.

"VI. Because it was error in his Honor to find that D. K.

Cooley collected between the 8th and 24th of November, 1897, a considerable amount of money which he turned over to T. D. Cooley, there being no sufficient testimony upon which to base any such finding.

"VII. Because his Honor erred in finding the sale of the stock of goods to T. D. Cooley by D. K. Cooley was made with the intent to defeat and defraud creditors, and that T. D. Cooley knew of it, and was a party to it, the evidence being that the sale was for a full and fair price, and that the creditors got the money arising from the sale.

"VIII. Because his Honor having found as a fact the money arising from the proceeds of the two notes were in the hands of the master, it was error not to order said money refunded to Thomas D. Cooley.

"IX. Because it was error in his Honor to find as matter of fact 'that the defendant, D. K. Cooley, having determined to resist and evade the payment of the creditors of Allen & Cooley and especially the note of Mrs. K. W. Allen, fraudulently conspired with the defendant, T. D. Cooley, who was cognizant of his purpose and a party to the same, to transfer all the visible assets of the firm of Allen & Cooley received by him in the agreement of dissolution to said T. D. Cooley, with intent to delay, hinder and defraud the creditors of said Allen & Cooley, and that the pretended sale of the stock of goods by D. K. Cooley to T. D. Cooley is fraudulent and void.' The evidence showing that the only assets sold to T. D. Cooley being the stock of goods, which were sold for a full and fair price, and the proceeds of which went to the creditors of Allen & Cooley.

"X. Because his Honor erred in finding that the plaintiff was in imminent danger of having the debts of Allen & Cooley to pay, when the testimony shows that the plaintiff had transferred all of his property to his wife to keep from paying the debts, and, therefore, has nothing to pay the debts of Allen & Cooley with.

"XI. Because his Honor erred in holding as matter of law that the plaintiff is entitled to the appointment of a receiver.

"XII. Because his Honor erred in appointing L. W. Perrin, Esq., master of Abbeville County, as receiver in this action, said appointment being contrary to the policy of the law in this State, the master being the right hand of the Court, and all subsequent litigation in this matter, if any should arise, would have to be referred to the master.

"XIII. Because the Court cannot render any final judgment in this case, the prayer of the complaint not asking for any judgment except the appointment of a receiver, and there being nothing in the complaint authorizing any other judgment.

"XIV. Because the evidence shows that the plaintiff does not come into Court with clean hands, and it being the policy of the law to leave wrong-doers where they put themselves, it was error in his Honor to grant any relief to the plaintiff."

*Messrs. Graydon & Graydon, Bonham & Watkins,* for appellant. Mr. Wm. N. Graydon cites: *Motion to strike out may be made after answer:* 53 S. C., 580. *Court should consider question of fraud raised herein as to obtaining judgment against firm:* 41 S. C., 304. *Master should not have been appointed receiver:* 19 S. C., 486.

*Messrs. Parker & McGowan, Tribble & Prince,* and *Ansel, Cothran & Cothran,* contra. Mr. J. L. Tribble cites: *Demurrer will not lie to a complaint alleging necessary probative facts:* 27 S. C., 622; 37 S. C., 520; 53 S. C., 442. *Motion to strike out came too late:* 53 S. C., 580. *Prayer is not part of complaint:* 33 S. C., 530. Messrs. Ansel, Cothran & Cothran cite: *Questions raised by demurrer herein are settled by former decisions in this case:* 53 S. C., 77; 56 S. C., 237. *Prayer is no part of the complaint:* 13 S. C., 439; 27 S. C., 225; 33 S. C., 530.

April 18, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. The complaint in this action, which

24—60

is reported herewith, seeks to set aside as fraudulent and void a sale of the stock of goods of the late firm of Allen & Cooley, made by defendant, D. K. Cooley, to the defendant, T. D. Cooley, and for the appointment of a receiver of the property and assets of the said firm of Allen & Cooley. The decree of the Circuit Court which, with the exceptions thereto, is reported herewith, sets aside said sale as fraudulent, and appoints L. W. Perrin, the master of Abbeville County, as receiver. The questions raised for our consideration by the exceptions will be responded to in a somewhat general way, without considering the exceptions in detail or in their order.

1. The Court properly overruled the motion to strike out of the complaint as irrelevant and redundant the following matters: (a) The third and fourth sentences of paragraph 8 (6?) of the complaint; (b) the second sentence of paragraph 7 of the complaint; (c) the ninth paragraph of the complaint; (d) the eleventh paragraph thereof; (e) the twelfth paragraph thereof; (f) the thirteenth paragraph thereof; (g) the fifteenth paragraph thereof down to sentence beginning "that irreparable loss." These matters were directly or remotely relevant to the matter sought to be established, a fraudulent transfer of property. We do not think that the motion to strike out was waived by the service on the same day but subsequently of the answer. *Whaley* v. *Lawton,* 53 S. C., 580. The answer in this case did not, as in *Whaley* v. *Lawton, supra,* expressly reverse the right to so move, but there is nothing inconsistent in entertaining after answer a motion to strike out irrelevant or redundant matter, the motion having been duly noticed before answering, as in this case. The Circuit Court did not decline to hear the motion on the ground of waiver but decided it upon its merits.

2. The demurrer to the complaint for failure to state a cause of action was correctly overruled. The written demurrer was based upon the following grounds:

"I. That it does not allege that the plaintiff has any debt

against D. K. Cooley that is due, but, on the contrary, alleges that the debt is not due and will not be due until next November, and does not allege that the plaintiff is a creditor of the firm.

"II. That it does not allege that this defendant is indebted to the plaintiff or to the firm of Allen & Cooley.

"III. That it does not allege that at the time of the sale of said stock of goods or at the time of the giving of said mortgage, the said Thomas D. Cooley was a creditor of said firm of Allen & Cooley, or either of them, and, therefore, states no cause of action under the assignment act of this State.

"IV. That it does not allege that either the defendant. D. K. Cooley, is insolvent or that this defendant is insolvent, but, on the contrary, shows that D. K. Cooley is abundantly able to meet any judgment which may be rendered against him.

"V. That it does not state that any creditor has attempted or is about to attempt to make any money out of the said plaintiff, or that there is any immediate danger of his having any of them to pay.

"VI. Because the complaint shows on its face, that the partnership heretofore existing between the plaintiff and D. K. Cooley has been dissolved by mutual consent, an account stated and agreed to, and that the plaintiff has received his full share of the partnership assets and has no longer any interest in said business.

"VII. Because the complaint does not state any facts sufficient to warrant the appointment of a receiver or the granting of an injunction, in that it fails to state that the plaintiff has any right to any of the property mentioned in the complaint, or that the defendant is selling or making way with any of said property so as to injure plaintiff during the litigation."

These objections to the complaint were all disposed of against appellant in the former decision of the Court in this case, reported in 53 S. C., at page 442.

The further ground interposed at the trial, that the com-

plaint does not state any facts tending to show that the sale of goods made to T. D. Cooley by D. K. Cooley was fraudulent, pretensive and without consideration, could not be sustained, as an inspection of the complaint will show.

3. The third exception assigns error in failing to consider the defense set up in the pleadings, that the K. W. Allen judgment was fraudulent and void. We do not see that any such issue was raised in the pleadings. It is true, that the eighth paragraph of the complaint alleges that Mrs. K. W. Allen obtained a judgment against Allen & Cooley, and the seventh paragraph of the answer denies the same. If defendants' denial were true, it would not effect the judgment rendered in this case. But it appears by the case of *Allen* v. *Cooley*, 53 S. C., 77, that Mrs. K. W. Allen obtained a judgment against D. K. Cooley on a note to her by Allen & Cooley, it being therein established that said note was a debt of the firm of Allen & Cooley, and that D. K. Cooley assumed the payment thereof when the firm of Allen & Cooley was dissolved. The question settled in that case could not be reopened in this case by showing, as was attempted, that no such note as sued on in that case was in fact executed by Allen & Cooley.

4. We have examined with care the evidence in this case, and we do not find that the conclusions of fact by the Circuit Court are against the preponderance of the evidence, and we, therefore, affirm such findings of fact. We, therefore, overrule the fourth, sixth, seventh, eighth, ninth and tenth exceptions. Such being the facts, it was not error of law to set aside the sale as fraudulent and appoint a receiver.

5. Under the authority of *Kilgore* v. *Hair,* 19 S. C., 486, we think it was not proper to appoint the master of the Court as receiver, and the case will, therefore, be remanded, with instructions to appoint some other suitable person as receiver.

6. The fifth exception contends that it was error, after

setting aside the sale of the stock of goods, not to provide for refunding to Thomas D. Cooley money paid by him under order of the Court to the master in settlement of two notes given by D. K. Cooley to B. B. Allen and indorsed by Thomas D. Cooley. The Circuit Court, perhaps, did not deem it proper to consider such matter, and, therefore, gave no opinion thereon. There may be some merit in appellants' contention in this regard, but as it has not been considered by the Circuit Court, we will not decide the question. We will, therefore, hold that T. D. Cooley is not to be prejudiced in regard to this matter by the judgment herein, but that whatever right he may have to a refund of said money may be tested by a proper issue made hereafter in the subsequent proceedings herein.

The judgment of the Circuit Court is modified in the particular mentioned, and the case remanded, with instruction to appoint some suitable person as receiver in place of the master of Abbeville County, but in all other respects it is affirmed.