### CROSBY v. BRADLEY

#### (140 S. E., 702)

1. MASTER AND SERVANT—WHETHER EMPLOYEE VOLUNTARILY QUIT OR WAS DISCHARGED HELD FOR JURY.—In action by employee for breach of contract of employment, evidence as to whether plaintiff voluntarily quit or was discharged *held* sufficient for jury.

2. FRAUDS, STATUTE OF—TESTIMONY HELD ADMISSIBLE TO PROVE THAT CONTRACT ALLEGED AS MADE ON OR "ABOUT" DECEMBER 24, COVERING EMPLOYMENT FOR YEAR FROM FOLLOWING JANUARY, WAS LATER CONFIRMED SO AS TO BE WITHIN STATUTE OF FRAUDS (CIV. CODE 1922, § 5516).—In employee's action for breach of contract of employment,

wherein complaint alleged that contract was made on or about December 24, 1923, covering employment for one year from the following January, testimony as to confirmation after January 1, as required by Civ. Code 1922, § 5516, *held* admissible, since word "about" means approximately, and, when used in regard to time, latitude, or strictness of construction, is dependent on connection in which it is used.

3. PLEADING—REMEDY COVERING OBJECTION TO ALLEGATION THAT CONTRACT WAS MADE ON OR ABOUT CERTAIN DATE IS BY MOTION TO MAKE DEFINITE AND CERTAIN.—Allegation that contract of employment was made on or about certain date, although being objectionable for indefiniteness, remedy is by motion to make allegation definite and certain.

Before RICE, J., Colleton, October, 1925.  Reversed and remanded.

Action by Dozier Crosby against Peter B. Bradley.  Judgment for defendant, and plaintiff appeals.

The exceptions, directed to be reported, are as follows:

1. Because his Honor, the presiding Judge, erred in directing a verdict in this case in favor of the defendant, and in basing his order upon the ground that he did not think the evidence of the plaintiff "sufficient" or "enough," inasmuch as: (a) The "sufficiency" of the evidence was for the jury and not the Court; and (b) there should be no direction of a verdict except where there is an entire absence of testimony to support plaintiff's action.

2. In that his Honor should have submitted the case to the jury, and erred in usurping the province of the jury by passing upon the force, effect, and weight of the evidence and the inferences to be drawn therefrom, and especially the inferences to be drawn from the letter from the defendant to the plaintiff introduced in evidence and marked Exhibit A.

3. Because his Honor erred in construing the letter introduced in evidence from the defendant to the plaintiff (Exhibit A) and in passing upon the force and effect of the facts and statements therein made, and the inferences flowing therefrom; whereas these matters and the issues they

presented should have been submitted to the jury for its determination.

4. In that his Honor erred in directing a verdict, because the evidence of the plaintiff made out a *prima facie* case of liability against the defendant which should have been passed upon by the jury.

5. In that his Honor erred in directing a verdict for the defendant because the evidence fully supported the allegations of the complaint, was susceptible of more than one inference, and should have been submitted to the jury.

6. In that the presiding Judge was authorized to direct a verdict only in those cases where reasonable minds could draw but one inference from the evidence, it being submitted that in this case the evidence and the inferences growing out of it clearly show and prove the defendant's liabiliity, and was amply sufficient to have warranted reasonable men in finding a verdict for the plaintiff, and the Court erred in refusing to permit the jury to pass upon these issues.

7. Because in passing upon a motion for a directed verdict evidence in a cause must be considered most favorably to the plaintiff, and his Honor erred in not so doing in this case.

8. Because the conclusion of the presiding Judge that the plaintiff was not discharged by the defendant, but had voluntarily resigned, was an issue made by the evidence from which more than one inference could be drawn, and should have been submitted to the jury for its determination, and his Honor, the presiding Judge, erred in not so doing.

*Messrs. Howell & Fishburne,* for appellant, cite: *Where more than one inference can be drawn from testimony, case should go to the jury:* 133 S. E., 553; 56 S. C., 111. *Error for Court to rule that plaintiff voluntarily quit service of defendant:* 82 S. E., 672. *"On or about," a relative term:* 29 Cyc., 1492. *In construction of pleading, allegations should be liberally construed:* 96 S. C., 532; 51 S. C., 436. *Motion to make more definite and certain should be made*

*before expiration of reply date:* 81 S. C., 126; 50 S. C., 54; 53 S. C., 580; 60 S. C., 353. *Contract not within Statute of Frauds:* 80 S. E., 610.

*Messrs. Padgett & Moorer,* for respondent, cite: *Cannot substitute new cause of action during trial:* 131 S. C., 78. *Contract here within Statute of Frauds:* 33 S. C., 241; 57 S. C., 150. *Not a quantum meruit suit; on a contract:* 60 S. C., 379. *Nonsuit proper here:* 17 S. C. L., 89. *Cases distinguished:* 96 S. C., 363; 21 S. C. L., 486; 104 S. C., 438; 193 N. W., 67.

December 24, 1927.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This is an action by Dozier Crosby, as plaintiff, against the defendant, Peter B. Bradley, commenced in the Court of Common Pleas of Colleton County, September 13, 1924, in which the plaintiff alleged a certain contract of employment for personal services to be performed by him to the defendant for the year 1924, as foreman of the defendant's plantation, called "Raven-Wood Stock Farm," located near Ashepoo in Colleton County, as foreman and caretaker of defendant's live stock; that after entering upon the performance of his duties he was discharged by the defendant on or about April 1, 1924, to his damage in the sum of $1,215. The defendant interposed two defenses: First, a general denial, and, second, the Statute of Frauds. The case was tried at the October, 1925, term of Court of Common Pleas for Colleton County, before Judge Hayne F. Rice and a jury. At the conclusion of plaintiff's testimony the defendant made a motion for a nonsuit, which was later changed to a motion for direction of a verdict, upon the following grounds:

"(1) That the plaintiff had attempted in his testimony to substitute an entirely different contract from that alleged in his complaint.

"(2) That there was no testimony that plaintiff was discharged by the duly authorized agent of the defendant."

His Honor, Judge Rice, overruled the first ground of the motion, but directed a verdict on the second ground, stating that, according to his view of the evidence, the plaintiff was requested to resign and that he voluntarily complied with the request; that the plaintiff was not discharged.

From the judgment entered on the verdict and on due notice the plaintiff has appealed to this Court, on exceptions which will be reported. Upon due notice respondent asked for the judgment to be sustained upon the additional grounds hereinafter set out.

There are but two questions involved in the appeal necessary to be considered, namely: (1) Did his Honor, Judge Rice, err in directing the verdict for the defendant upon the grounds that there is no testimony that the plaintiff was discharged; (2) if the first question be answered in the affirmative, should the judgment be sustained on the additional ground urged by the respondent?

The rule governing the granting of nonsuits and direction of verdicts has been stated so often by this Court that we consider it unnecessary to discuss the same at this time, and shall simply quote briefly from the opinions in some of the former decisions of this Court. Mr. Justice Blease in rendering the opinion of the Court in the recent case of *Lower Main Street Bank v. Caledonian Insurance Company,* 135 S. C., 158; 133 S. E., 555, in discussing the rule under consideration, used the following apt language:

"The well-established rule in this State is that if there is any testimony whatever to go to the jury on an issue involved in a cause, or even if more than one inference can be drawn from the testimony, then it is the duty of the Judge to submit the cause to the jury. This is true, even if witnesses for the plaintiff contradict each other, or if a witness himself in his testimony makes conflicting statements. The credibility of witnesses is entirely for the jury. On a motion for a directed verdict, the evidence in the cause must be considered most favorably to the plaintiff."

Again, in the case of *Riordan v. Doty,* 56 S. C., 111; 34 S. E., 68, Mr. Chief Justice McIver, speaking for the Court, quotes with approval the following statement from the opinion in the case of *Harvey v. Doty,* 50 S. C., 555; 27 S. E., 946:

"The question is—not whether the evidence is sufficient to establish plaintiff's case, for that is a question solely for the jury, and we have no right or disposition to invade their province—but solely whether there was any evidence tending to prove plaintiff's case."

Keeping in mind this test, was there any testimony in the case at bar tending to prove plaintiff's alleged cause of action? We shall only refer to so much of the testimony as is pertinent to the questions raised by the appeal.

Crosby, the plaintiff, testified that the defendant owned a farm called "Raven-Wood Stock Farm," located near Ashepoo, in Colleton County, and that W. J. Moore was the general manager of this farm for the defendant; that he (the plaintiff) was first employed on this farm on July 2, 1922, and went to work on that day, and that Mr. Moore was then manager and employed the plaintiff; that under this contract the plaintiff was to work for the defendant for a period of six months, from July 2, 1922, to January 1, 1923; that later plaintiff was employed by the defendant, through Mr. Moore, his general manager, for the year of 1923; that the plaintiff went to the office of Mr. Moore just before Christmas in 1923, he thought about the 23rd or the 24th of December, 1923, and Mr. Moore told him on that occasion that he wanted him (the plaintiff) for another year; and again after the holidays, on the 1st or 2nd of January, 1924, plaintiff went to the office of Mr. Moore, and Mr. Moore at that time told the plaintiff that he wanted plaintiff for another year, and plaintiff went to work; that plaintiff under the agreement was to get as compensation for his services $100 per month and in addition certain provisions, amounting in value to about $25 per month, and that

the contract for that year, 1924, was to end December 31, 1924; that plaintiff went to work as foreman of the said farm and caretaker of the live stock, just as he had been doing before. The plaintiff, according to his testimony, worked up to the 1st day of March, at which time he received a letter from Mr. Moore, as follows:

"Ashepoo, S. C., Feb. 29, 1924.

"Mr. Dozier Crosby, Ashepoo, S. C. Dear Sir: Mr. Peter B. Bradley has become very much dissatisfied with conditions on the farm. He has not complained about the expense, but he has seriously complained about the condition and cleanliness of the entire property. He is therefore requesting your resignation, effective April 1st.

"Yours truly,                    W. J. Moore."

After receiving this letter plaintiff had a conversation with Mr. Moore, as shown in the following testimony:

"Q. Mr. Crosby, you say you had a conversation with Mr. Moore after that letter of discharge was sent to you? A. Yes, sir.

"Q. Did Mr. Moore state to you why you had been discharged? A. He told me in the office on Monday or Tuesday morning to come in, and he said, 'Crosby, just talk our troubles over'; and I said I needed talking, and said why, and I said, 'You see me'; and he said, 'What happened to you would happen to me; and I mean last year; I would not have been here now; and what happened to me, has happened to you.'

"Q. What happened to him? Lost his job as superintendent and run out on the farm. He lost his job at the mill.

"Q. You understand you were voluntarily resigning, or you were discharged? A. I was discharged."

The plaintiff, according to his testimony, was paid up to April 1st, one month in advance, but continued to work up to within four days of April 1st. It appears to be conceded that Moore was the general manager in charge of the said plantation.

Under the view we take of the case it would not be proper to comment upon the strength of the testimony, and, therefore simply state that, as we view the testimony, it made a question for the jury as to whether the plaintiff voluntarily quit or was discharged; and in our opinion, his Honor, Judge Rice, erred in directing a verdict.

The remaining question is whether the judgment should be sustained on the additional ground urged by counsel for respondent, to wit:

"The plaintiff having alleged that the contract of employment was made on or about December 24, 1923, under which his services were to commence on January, 1924, and end December 31, 1924, and said contract being obnoxious to the Statute of Frauds (Section 5516, Civil Code of 1922), unless it or some memorandum or note thereof was reduced to writing and signed by the party to be charged or his agent (said Statute being expressly pleaded by the defendant as a bar to the action), and the evidence having shown that neither the alleged contract nor any memorandum or note thereof was in writing and so signed, the presiding Judge, under the pleadings, should not have permitted the plaintiff to testify as to any contract made after January 1, 1924, or as to any ratification had after that time of any contract made prior to January 1, 1924, and should have directed a verdict for the defendant upon the ground that the plaintiff had failed to prove the contract alleged in the complaint so as to take it out of the Statute of Frauds."

It is clear that if the alleged contract was made on the 24th of December, 1923, between the parties, to be operative and of force for a period of twelve months to begin January 1, 1924, and ending December 31, 1924, it falls within the Statute of Frauds, unless evidenced by a written instrument signed by the parties to be bound thereby, and there is no testimony that the contract was in writing. The allegation of the complaint pertinent to this question is as follows:

"(1) That on or about December 24, 1923, in the County of Colleton, State of South Carolina, the defendant above named, through his duly authorized agent, entered into a contract for employment with the plaintiff, wherein and whereby he employed the plaintiff to act as foreman or manager of his plantation near Ashepoo, in the said County and State, and to supervise and take care of the live stock on said plantation for the year 1924, the said contract providing that the plaintiff's service should commence on January 1, 1924, and terminate on December 31, 1924, and that he should be paid by the defendant the sum of $110 per month, payable monthly during the life of the said contract, as compensation for his services under the said contract; and that in addition thereto it was agreed that the plaintiff for the said term should have the right and privilege for himself and family of using from said plantation, free of charge, all farm produce and meat, the reasonable value of which was worth to the plaintiff not less than the sum of $25 per month."

His Honor, Judge Rice, admitted testimony tending 2, 3 to prove that the alleged contract was made or confirmed on January 1, or 2, of the year 1924. We think that his Honor was clearly correct in this, for the reason that the word "about" appears immediately before the wording "December 24, 1923." As stated in Corpus Juris, Vol. 1, 334 to 338, the word "about" is an ordinary word, of no artificial meaning or technical significance, and should receive the rendering which is given to it in common parlance; and according to the author of this work it means nearly; approximately; more or less; in the immediate neighborhood of; around; not far from, etc.; and "when used in regard to *time*, the latitude or strictness of construction of the word is in a great measure dependent upon the connection in which it is used. The word as used in this connection is a very comprehensive term and may, in certain instances cover a considerable extent of time, or may refer to

the immediate time mentioned. But in these cases where the time is material, the use of the word is not approved." The allegation that the contract was made "on or about December 24, 1923," is objectionable for indefiniteness, but the remedy was by motion to make the allegation definite and certain. See the opinions in the following cases: *Dempsey v. Western Union*, 77 S. C., 402; 58 S. E., 9; *Wingo v. Inman Mills*, 76 S. C., 552; 57 S. E., 525; *Lawrence v. Lawrence*, 81 S. C., 126; 62 S. E., 9; *Smith v. Smith*, 50 S. C., 54; 27 S. E., 545; *Whaley v. Lawton*, 53 S. C., 580; 31 S. E., 660; *Allen v. Cooley*, 60 S. C., 353; 38 S. E., 622. Also the case of *Catlett v. Burke*, 96 S. C., 363; 80 S. E., 610, upholds the position of the Circuit Judge in admitting testimony tending to show that, although the contract may have been entered into on December 24th, it was confirmed in January following.

It is our opinion that the judgment cannot be sustained on the additional ground urged by the respondent, and the exceptions are therefore sustained.

It is the judgment of this Court that the judgment of the Circuit Court be and is hereby reversed, and the cause remanded for a new trial, with leave to the defendant to move before the Circuit Court for an order requiring the complaint to be made definite and certain in such particulars as he may be advised, consistent with the rules of pleading, and to demur or answer.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE, and STABLER concur.